FILED

2022 Jul-20  PM 02:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ASHLEY BRANAMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:20-cv-01822-AKK** |
| | ) | |
| **MARK PETTWAY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Ashley Branaman brings this action against Sheriff Mark Pettway and Billy Watts for alleged sex discrimination, retaliation, and deprivation of her right to equal protection. Doc. 1. Before the court are the defendants' motion for summary judgment, doc. 27, and Branaman's motion to strike, doc. 31. For reasons stated below, Branaman's motion to strike is due to be denied and defendants' motion for summary judgment is due to be granted.

## I.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate a genuine issue of material fact, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, a court must view the evidence and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *Asalde v. First Class Parking Sys. LLC,* 898 F.3d 1136, 1138 (11th Cir. 2018).

## II.

Ashley Branaman joined the Jefferson County Sheriff's Department as a deputy in 2008. Doc. 28-1 at 13:22-14:1. Branaman first met Billy Watts, at the time a sergeant with the department, when he responded to a domestic dispute call at Branaman's residence in 2015. *Id.* at 21:17-22:7. During that encounter, Watts gave Branaman his telephone number in case she "needed to talk." *Id.* at 23:21-23. Branaman and Watts then developed a close friendship. *Id.* at 25:4-12. In 2017, the Sheriff's Department transferred Branaman to the Center Point night shift under Watts's supervision. Doc. 28-3, ¶ 6. In early 2018, Branaman and Watts developed a physical relationship that lasted until June or July 2018. Doc. 28-1, 25:13-16, 28:14-19. During the course of their physical relationship and continuing until August 2019, Watts supported Branaman financially by purchasing items for her and her children, giving Branaman a credit card, and funding her mortgage payment on at least one occasion. *Id.* at 28:20-31:3, 42:4-12. Branaman informed the Sheriff's

Department of her relationship with Watts at an unrelated personnel board hearing on August 26, 2019. *Id.* at 44:12-21; doc. 28-1 at 50-59. The Sheriff's Department instructed Branaman to report the relationship to Internal Affairs, where she then filed a formal harassment complaint against Watts. *Id.* at 48:3-17.

Branaman alleges that the harassment consisted of Watts: threatening to move her to a different, less desirable shift; "showing up on calls that he was not needed on that [Branaman] was on;" "show[ing] up where [Branaman] was . . . because [he] could see who was located where on the map if [he was] logged onto the system;" driving by her house; and "threaten[ing] [that] if [she] didn't answer him or give him a reply, he was going to show up at [her] house." *Id.* at 35:7-17, 38:2-15; doc. 28-1 at 60. The resulting internal investigation found "that there was no evidence of harassment, but there [was] evidence of Watts making false statements and or perjuring himself while giving testimony at the Personnel Board Hearing." Doc. 28-1 at 60, 67.

The Sheriff's Department transferred Branaman from the Center Point substation to the Forestdale substation on August 27, 2019, one day after the personnel board hearing where Branaman revealed her relationship with Watts. Doc. 28-1 at 56:12-19. Branaman alleges the Forestdale substation was not convenient for her to get her children to school. *Id.* at 56:23-57:2. Branaman's pay and duties did not change following the transfer. *Id.* at 58:8-12. Initially, Branaman's hours were

different and less convenient than her previous schedule at the Center Point substation, but after Branaman voiced concerns, her lieutenant adjusted her schedule to accommodate her needs. *Id.* at 59:1-7.

Branaman claims that she was ultimately "forced to resign due to Watts's continued harassment of her and her treatment by the Sheriff's Office." Doc. 1 at 5. Branaman also maintains that she has been unable to obtain other employment because the Sheriff's Office "wrongfully and maliciously [coded] her as 'terminated.'" *Id.* Based on these allegations, Branaman asserts: (1) a Title VII sex discrimination claim against Sheriff Pettway; (2) a Title VII retaliation against Sheriff Pettway; and (3) a § 1983 claim against Sheriff Pettway and Watts for allegedly violating Branaman's constitutional right to equal protection. *Id.* at 6-15.

### III.

The court turns first to Branaman's motion to strike and then to the merits of the defendants' motion for summary judgment.

### A.

Branaman moves to strike the affidavits of Sergeant Derrick King and Deputy Chief Anthony Pippin, which the defendants filed in support of their motion for summary judgment. Doc. 31 at 1-3. Branaman argues that the defendants failed to timely disclose King and Pippin as potential witnesses and therefore cannot rely on King's and Pippin's affidavits at this stage in the litigation. *Id.*

Rule 26 requires parties to submit initial disclosures at the outset of discovery listing "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a). A party must also promptly supplement or correct its disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).

Discovery in this matter closed on March 1, 2022. Doc. 20. The defendants' deadline for supplementation was therefore January 31, *see id*., and it is undisputed that they did not supplement their disclosures to identify King and Pippin until March 31, *see* doc. 31-2. Since the defendants did not properly disclose these witnesses to Branaman, then, the pertinent question is whether it had "been made known to [Branaman] during the discovery process or in writing" that King and Pippin might possess discoverable information relevant to the Branaman's claims, thereby obviating supplementation. *See* Fed. R. Civ. P. 26(e). On this issue, courts

5

within the Eleventh Circuit focus "on whether the moving party is aware that the affiant is an individual with discoverable information." *Ojeda-Sanchez v. Bland Farms, LLC*, No. 6:08-CV-096, 2010 WL 2382452, at *1 (S.D. Ga. June 14, 2010); *see also Griffin v. Biomat USA, Inc.*, No. 1:19-CV-604-ECM, 2022 WL 424964, at *6 (M.D. Ala. Feb. 10, 2022) (citing Ojeda-Sanchez approvingly for its collection of cases).

Here, Branaman cannot plausibly claim she did not know that King and Pippen might have discoverable information. King interviewed Branaman in connection with her initial complaint to Internal Affairs and subsequently investigated her allegations against Watt, *see* doc. 28-4, and Branaman alleged in her EEOC complaint that Pippin is the person who informed her of her reassignment to Forestdale, *see* doc. 1-1. Accordingly, Branaman knew or should have known that King and Pippen might possess discoverable information, and her motion to strike their affidavits is due to be denied.

**B.**

In count one, Branaman pleads a sex discrimination claim against Sheriff Pettway for the alleged harassment by Watts. Title VII prohibits employers from discriminating in the workplace on the basis of sex. 42 U.S.C. § 2000e-2(a). There are two ways to establish gender-based discrimination claims under Title VII. *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en

6

banc). Relevant here, a plaintiff can show that the employer took a "tangible employment action" against the employee because of the employee's gender. *Id*. A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "A transfer can be an adverse employment action 'if it involves a reduction in pay, prestige or responsibility.'" *Nash v. Palm Beach Cnty School Dist.,* 469 F. App'x 712, 714 (11th Cir. 2012) (quoting *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000)).

Here, Branaman alleges that her involuntary assignment to the Forestdale substation and subsequent coding as "terminated" upon her resignation constituted tangible employment actions.  Branaman, however, concedes she retained the same responsibilities, pay, and benefits after her transfer, and the Jefferson County Sheriff's Department Policies and Procedures permit reassignment at any time. *See* doc. 28-2 at 12. Furthermore, although she claims that the transfer to the Forestdale substation proved less convenient for taking her children to school on time, when Branaman voiced this concern to her lieutenant, the department adjusted her hours accordingly. In that respect, Branaman's disappointment in not working at the location most convenient for her does not qualify as an adverse employment action.

As to the coding of her separation, the defendants assert that the Sheriff's Department properly coded Branaman as "Termination-Voluntary" because "[e]mployees who resign are coded as 'Termination-Voluntary' while an employee who is fired would be coded 'Termination-Dismissal.'" Doc. 28-2 at ¶¶ 8-9. These contentions are unrebutted. Accordingly, Branaman has also failed to establish an adverse action as to the coding of her resignation.

## 1.

Even in the absence of a tangible adverse employment action, sexual harassment may be actionable if it creates a "hostile work environment." *Reeves*, 594 F.3d at 807. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (internal citation omitted). Accordingly, to establish a hostile-work-environment claim, a plaintiff must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves*, 594 F.3d at 808. In analyzing a such a claim, the court considers the alleged harassment's "frequency . . . ; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (quoting *Harris*, 510 U.S. at 23)). A plaintiff must also prove that the work environment was both subjectively and objectively hostile: "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (quoting *Harris*, 510 U.S. at 21–22). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale*, 523 U.S. at 81 (quoting *Harris*, 510 U.S. at 23).

### 2.

Turning to the specifics here, Branaman fails to make out her *prima facie* hostile work environment case.  Crucially, Branaman does not claim that Watts subjected her to unwelcome sexual harassment such as sexual advances, requests for sexual favors, and other conduct of a sexual nature. Instead, Branaman asserts that after she ended her relationship with Watts, Watts harassed her by threatening to move her to a different, less desirable shift, showing up on calls unnecessarily, showing up at her location, driving by her house, and threatening to drive by her house when she would not reply. To state the obvious, this alleged conduct is inappropriate.  But to prevail, Branaman needs to show more.  Relevant here,

9

Branaman does not claim that Watts's actions interfered with her work performance or that Watts subjected Branaman to physical threats, humiliation, or even offensive utterances. As such, based on this record, Watts's behavior does not rise to the objective severity of conduct necessary for a Title VII harassment claim.

Branaman's *prima facie* case also fails also because she has not established a basis for holding Sheriff Pettway liable as Watts's employer. When a person's "high rank in the company makes him or her the employer's alter ego," that person's conduct is attributable to the employer. *Ellerth,* 524 U.S. at 758. An employer is liable under this theory if "the employer's own negligence" caused the unlawful discrimination. *Id*. at 758. Thus, as it relates specifically to sexual harassment, an employer is negligent "if it knew or should have known about the conduct and failed to stop it." *Id*. at 759. Importantly, however, although employers can be vicariously liable "for an actionable hostile environment created by a supervisor," the employer can avoid liability by raising an affirmative defense with "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. at 765.

Branaman does not allege that Sheriff Pettway had any actual or constructive knowledge of Watts's alleged harassment prior to her August 2019 report.

Moreover, no basis exists to hold Sheriff Pettway vicariously liable for the harassment; Branaman acknowledges that the Sheriff's Office had an anti-harassment policy and procedures in place to report harassment, *see* doc. 28-1 at 5-6, but that she did not report the alleged harassment to internal affairs until at least six months after it began based on her belief that she "wouldn't be protected." *Id.* at 13. However, "an employee's generalized fear of repercussions cannot form the basis for an employee's failure to complain to his or her employer." *Madray v. Publix Super Markets, Inc.* 30 F. Supp. 2d 1371, 1375 (S.D. Fla. 1998). And when, as here, an employer has promulgated and disseminated a policy, the "employee must provide adequate notice that the employer's directives have been breached so that the employer has the opportunity to correct the problem." *Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1366 (11th Cir. 1999). Thus, in the absence of any evidence to show that Branaman had a credible fear of retribution, Sheriff Pettway cannot be held vicariously liable for behavior no one informed him he needed to correct.

* * * * * * *

Branaman has failed to make out a sex discrimination or harassment claim under Title VII.  Therefore, the defendants' motion for summary judgment as to count one is due to be granted.

## C.

Branaman also pleads a retaliation claim against Sheriff Pettway based on her transfer to Forestdale and the "termination" coding for her eventual separation. To establish a prima facie case of retaliation in violation of Title VII and Section 1981, Branaman must show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal relationship between the protected expression and the adverse action. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008). Where, as here, proof of retaliatory intent is offered by way of circumstantial evidence, courts apply a burden-shifting framework. *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). If the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate reason for the adverse employment action. *Id*. If the employer proffers a legitimate reason, the burden shifts back to the employee to show that the legitimate reason was pretext for prohibited retaliatory conduct. *Id*. The plaintiff can demonstrate pretext by exposing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's reasoning. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).

## 1.

Sheriff Pettway challenges only the adverse employment action[1] and causal relationship[2] prongs, arguing that Branaman's reassignment to the Forestdale substation was not an adverse action and that it had a legitimate, non-discriminatory reason for the transfer. *See* doc. 29 at 23-26.

The court agrees.  As discussed previously, *see supra* Section III.B, Branaman's transfer did not result in lesser pay, responsibilities or prestige, and her reassignment also did not impede Branaman's professional growth or advancement. Accordingly, Branaman was not subjected to an adverse employment action.

---

[1]  "To constitute a materially adverse action, the employer's action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable worker from making or supporting a discrimination charge." *Jiles v. United Parcel Serv., Inc.* 360 Fed. App'x 61, 66 (11th Cir. 2010) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). Among the facts and circumstances affecting whether the change is considered "adverse" are whether the change results in "lesser pay, responsibilities or prestige," and whether the change would "impede an employee's professional growth or advancement." *Doe v. DeKalb County School District*, 145 F.3d 1441, 1452 (11th Cir. 1998).

[2] To establish "a causal connection between protected activity and a materially adverse action, [a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (internal citation omitted). While close temporal proximity between the protected activity and the adverse action is circumstantial evidence that may be sufficient to show that the two were not wholly unrelated, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Bell v. City of Auburn,* 722 Fed. App'x 898, 900-01 (11th Cir. 2018) (quoting *Brungart v. BellSouth Telecom*, Inc., 231 F.3d 791, 799 (11th Cir. 2000)). Ultimately, to prevail, a plaintiff must demonstrate that her protected activity was the "but-for" cause of the adverse employment decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Moreover, Sheriff Pettway offered a legitimate, nondiscriminatory reason for the transfer, which Branaman failed to rebut.  Sheriff Pettway maintains that the Sheriff's Department reassigned Branaman to Forestdale in response to a complaint from a citizen within Branaman's former patrol area.  The complainant, whose son Branaman killed by striking him with her patrol car, objected to Branaman's continued employment in his community, stating that "if [Branaman] was to stop them for any reason, he would not comply," and that he and his wife do not feel safe after what happened to their son. Doc. 28-1 at 70. Sheriff Pettway claims that the Department reassigned Branaman as a result of this complaint both in the interest of the community and out of concern for Branaman's safety.  Doc. 29 at 25-26. Branaman fails to meaningfully rebut this reason by demonstrating pretext. Accordingly, in the absence of any evidence challenging Sheriff Pettway's contention or showing that the Department handled other similar complaints differently, Branaman has not met her burden of showing a causal link between her transfer and her complaint against Watts.

Additionally, to the extent Branaman also bases her retaliation claim on the Sheriff's Department coding her as "terminated" upon her resignation, she has again failed to show pretext. As discussed previously, the defendants maintain that the department properly coded Branaman as "Termination-Voluntary" upon her resignation, noting that "[e]mployees who resign are coded as 'Termination-

Voluntary' while an employee who is fired would be coded as 'Termination-Dismissal.'" Doc. 28-2 at ¶¶ 8-9. Branaman offered no evidence to rebut this contention. Moreover, even if this label qualified as an adverse employment action, Branaman has not offered any evidence of pretext – for example, by producing evidence that the coding nomenclature in her case was inconsistent with or contradictory to the standard coding method used for all employees upon resignation.

To close, Branaman has failed to establish a prima facie retaliation claim or to rebut Sheriff Pettway's legitimate non-retaliatory reason for her transfer and the "termination" coding after she resigned. The defendants' motion for summary judgment as to count two is therefore due to be granted.

## D.

Finally, Branaman pleads a claim under § 1983 against both Sheriff Pettway and Billy Watts. Branaman bases her § 1983 claim on her right to equal protection under the Fourteenth Amendment. Doc. 1 at 12-15. Specifically, Branaman claims that Sheriff Pettway and Watts, acting both in their individual and official capacities, violated her right to equal protection by discriminating against her because of her sex. *Id.*; *see Cross v. State of Ala., State Dep't of Mental Health*, 49 F.3d 1490, 1507 (11th Cir. 1995) (recognizing a right under the equal protection clause to be free from gender-based discrimination in public employment).

Importantly, to maintain an action under § 1983 against state and local officials for violations of federal rights there must be an underlying violation of a constitutional right or a federal statutory right. *See Rooney v. Watson*, 101 F.3d 1378, 1380–81 (11th Cir. 1996). Branaman's § 1983 claim relies on the same evidence and the same set of facts as her Title VII claim. For the reasons stated above, however, Branaman has failed to establish a sex discrimination claim against Sheriff Pettway or Watts, *see supra* Sections III.B, C, and her § 1983 claim therefore fails.

## IV.

For these reasons, the defendants' motion for summary judgement is due to be granted in full. The court will enter a separate order contemporaneously.

**DONE** the 20th day of July, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE